Good morning, Your Honors. My name is Gary Huss. I am appellate counsel for Mr. Tedeschi. I'd like to focus on two issues, the similarity issue and whether this had substantial injurious effect. What we do know from the record is that clearly there was jury misconduct in the consideration of an extrajudicial definition. On the issue of whether it was a similar definition or not, the problem I have is that we don't, to this date, know what the definition was, what the source was. We don't even have one word of the definition. What we do know from the record is that the jury was having trouble with the jury instruction on malice aforethought. And after it was read to the jury, they still wanted more. And the judge told them, you can't have more, and they were going to have to be satisfied. What the jury, what some of the jurors, or at least one juror in this case, did was during the lunch break he went, claims that he went to a library source, came up with another definition, and a jury that had been apparently deadlocked on this issue of malice, then very quickly found the defendant guilty of second-degree murder. In other words, whatever it was provided satisfied what it was looking for, but we still don't know what it was. So tell us the Supreme Court case that you're relying on to say that the State court decision was contrary to or an unreasonable application of. I can't give you a specific Supreme Court case. Well, on habeas, on habeas then, how are you going to convince us that the State court decision was an unreasonable application of Federal law or contrary to Federal law? If we don't have a benchmark, if we don't have a Supreme Court case that sets the standard, you lose. Well, I would rely on the due process clause of the Constitution, not a specific case. I don't know that we have a specific case that we could cite that would be on all fours with this situation. I think what I was focusing on was whether this had a substantial injurious effect as far as the standard. And in my view, the jury was deadlocked on malice, and very shortly after considering this improper source or improper definition, it then returned a verdict. So reasonable logic leads us to the conclusion that whatever it considered was improper and that it did have an effect on the jury, the verdict, and that it was substantial. And I'll submit it. Was there much difference between the definition and what the assailant said? I wish we knew. That's the problem, is that this didn't come out until a later evidentiary hearing, and the jurors' memories were foggy on exactly what it was or what the source was. In fact, even the credibility of the juror that brought it in was drawn into question. We don't know if it was his characterization of some definition or whether it was a specific definition out of some book, but we're all left with that doubt. We don't know what it was, but it seems to have made a difference. In the examination of the jurors, though, it seemed to me that not very many of them really even remembered it. And that's the problem with this kind of a situation where something happens and then you don't revisit it until a long time later. Their memories do become foggy. Well, if it had been very important, would they have remembered it? I think it would be great if we knew exactly what it was that they considered because maybe we wouldn't be here. Either it would have been clearly found to have been so similar it didn't make any difference, but we couldn't do that because nobody could be specific. Everybody was gathering definitions from the library, and nobody could establish that that was the definition, any one of the ones submitted by either side. And that's the problem that I have, is now we have a verdict, and the integrity of that verdict is called into question because we don't know what they considered. Thank you.  If this may please the Court, Cliff Zoll from the Attorney General's Office for the respondent in this case. Just a couple of points, unless the Court has specific questions of me. First of all, there's no doubt this was jury misconduct, right? Absolutely, Your Honor. Absolutely. Yes, I mean, the record is very clear that apparently a young male juror went and got a dictionary definition of malice and introduced it into the jury room, and that would be the introduction of extraneous material into the jury room, and it would be improper. The issue really is, for this Court, is whether that misconduct had a substantial and injurious effect on the jury's verdict, and it's the respondent's position that it did not. Petitioner's counsel made mention of the fact that this jury was apparently deadlocked on malice. Those were his words this morning, and I would note that there's no record of that. That's simply speculation on the part of the petitioner, and that's simply not good enough to demonstrate a substantial or injurious effect on the verdict. There's a case, Marino, that's cited by both parties. In the Marino case, a very different situation that's presented here. First of all, Marino was decided in 1987 under a different standard of review. At that time, the prosecution would have had to demonstrate that the introduction of the extraneous material was harmless beyond a reasonable doubt. Today, the Brecht standard prevails and requires that there be a demonstration that the extraneous material had a substantial and injurious effect on the verdict. So that's one difference. The second difference, I think, is most significant, and that is, in Marino, there was a holdout juror that had held out for 30 days, and that juror then changed his vote immediately or shortly thereafter the introduction of the extraneous material. And also in that case, there was evidence that the dictionary definition was different than the definition that was provided by the court. So that case is clearly distinguishable from the situation that's present in this case. Do you know how long the jury was deliberating here before? I believe it was two days, Your Honor. Do we know what the division of the jury was? There's reference by the district court in the record, although I cannot give the court a cite to the excerpts off the top of my head, that there was a 10-2 vote for conviction of first-degree murder. So apparently, at least that's how the district court characterized it, that the jurors were deliberating between first- and second-degree murder in this case. And certainly, I respond and acknowledge that the jury did ask the court about malice, but as I pointed out in my brief, it's our position that malice was present under either the defense theory or the people's theory. The people's theory was you should believe the victim's granddaughter, Tiffany, and find that the defendant shot the victim in cold blood, and this was murder. The defense position was that the victim was the aggressor, and the defendant shot the victim in self-defense. And as I noted in my brief, there was a 67-page closing argument given by defense counsel, and not once in that argument does he make mention of the definition of malice. He certainly makes mention of the fact that malice would be negated by if you accepted the petitioner's version under a self-defense theory, but the definition of malice itself does not, in Respondent's position, appear to be a crucial issue. And unless the court has any further questions. The difference between what he was convicted of and what he was arguing he should be convicted of. Yes, but that's based on self-defense. In other words, yes, the net result, if you accepted petitioner's argument, was there was no malice, but the reason, the crucial reason for that would be that you accepted his version of the events, and you found that he had either an actual and reasonable belief in the need to defend himself, which would have entitled him to acquittal, or an actual but unreasonable belief in the need to defend himself, which would have entitled him to a manslaughter verdict. Well, but then it would be hard to understand why somebody would be going out looking for a definition of malice that wasn't, that was different from what they got, which they didn't apparently like very much. I certainly, I recognize that. I recognize that for some reason they had an interest in malice. But again, there's nothing like in Marino to really tie that, the introduction of extraneous material, to a change. There's no evidence that there was a 10-to-1 or 11-to-1 vote, and 11 of the jurors wanted murder, and one was holding out for manslaughter, and then they went and got a dictionary definition, and then all of a sudden the holdout changed his vote, like occurred in Marino. That's not what occurred here. Well, what did the State court say? This is a habeas. What is it that we're supposed to defer to here? Well, I think the Brecht standard is tricky to some extent, because it's our position that it's a straight Brecht analysis that this court must look and determine whether there was a substantial or an injurious effect on the verdict. And it's somewhat strange, because that's not the standard that the State court applies, because the State court applies In re Carpenter, which looks at implied bias and actual bias based on the introduction of extraneous material. But in habeas, we don't care how the State court reached its decision. The issue is whether or not it's contrary to or in a reasonable application of Supreme Court or Federal law. Right. Right? So you guys are talking about Marino, but Marino is a Ninth Circuit decision. So what Supreme Court case should we be looking to to determine whether or not the State court's decision was consistent with Federal law? Brecht. Brecht. Because Brecht is the case that states the standard when you have an instructional error or if you have the introduction of extraneous material in this case. So the question really is, was there a substantial or injurious effect on the verdict? And the State court found, albeit not specifically citing Brecht or using that kind of language, the State court found no, that there was not an effect on the verdict. But, you know, the trouble is that it said that because the evidence was so strong. I mean, there's no question he did it. He shot, he killed the guy. But the problem with that is why is the jury all hung up on malice then? Well, again, I'm not sure that they were hung up on malice because, again, as I think one member of the Court noted, not very many of the jurors even remember this discussion. So, again, if this dictionary definition was so different, if it introduced something. And so I think the question is, did you have an effect?  And if there was, was it five years was gone by or more than that? I acknowledge that, Your Honor. But certainly if it was significant enough to have impacted their decision, if it was significant enough to have been crucial, and one would think that there would have been a recollection of that as a turning point, because that's what happened in I see my time is up, and unless the Court has any further questions, I submit the matter. Thank you. Thank you very much. Has the appellant used all of his time? Has the appellant used all of his time?  Five minutes? Yeah. Your Honor, I don't have anything else to add. I'm prepared to submit it. Are there any further questions of the appellant? No. All right. Thank you. The case just argued is submitted for decision.
judges: Hug, Schroeder, Rawlinson